### BYINGTON v. PIAZZA et al.

(Supreme Court, Appellate Division, First Department. March 19, 1909.)

CORPORATIONS (§ 198*)—STOCKHOLDERS—MEETINGS—JUDICIAL REGULATION—INJUNCTION.

Shares in a corporation were transferred to a trust company on condition that it should for a certain number of years vote the stock, at each annual election of stockholders, "for the re-election of the present first permanent board of directors." Plaintiff, as a purchaser of stock in the corporation, was given an interest in the stock held by the trustee. *Held* that, pending an action to determine the right of the trust company to vote the stock to increase the number of the directors, that a temporary injunction would lie to restrain the company from so voting the stock.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 198.*]

Appeal from Special Term, New York County.

Action by Roderick Byington against Amodio F. Piazza and others. From an order denying a motion for injunction pendente lite, plaintiff appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

George P. Breckenridge, for appellant.
Michael J. Horan, for respondents.

SCOTT, J. Plaintiff appeals from an order denying his motion for injunction pendente lite. It appears from the complaint and moving

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

papers, and is not denied, that the defendant Amodio F. Piazza, having received a certain concession or contract from the government of Nicaragua, assigned it to the defendant Central American Growers' & Transportation Company, a South Dakota corporation, for which said company issued to him 5,100 shares of its capital stock. The said company then offered for sale what it termed the "first block" of stock, consisting of 900 shares, under what it denominated a "rule" which it was provided should govern such sale. This rule provided that each purchaser of stock from the first block should receive a bonus, consisting of a pro rata share of 60 per cent. of the 5,100 shares issued to said Piazza, upon condition that such purchaser agreed to deposit said bonus in a trust company to be selected by the board of directors, with instructions for said trust company to vote the entire amount of their bonus stock, with the 40 per cent. belonging to A. F. Piazza and associates, thereby casting the full vote of 5,100 shares at each annual election of stockholders, "for the re-election of the present first permanent board of directors, namely, E. H. Mayne, Ira L. Tetterhof, A. F. Piazza, W. J. Greacen, and W. L. Loeffel, each year for 15 consecutive years, providing none of said directors shall have been disqualified by violation of their trust, in which case the disqualified director will be replaced by the unanimous vote of the remaining directors."

In order to carry out this rule Piazza executed to the defendant Title Guarantee & Trust Company a trust deed of the 5,100 shares issued to him. By this deed it was provided that the title company, as trustee, shall hold said stock for the term of 15 years, or during the lives of Amodio F. Piazza and of Joseph William Piazza, and of the survivor of them, whichever term should first end; that the trustee shall hold said stock registered in its name as trustee, and shall issue certificates of interest for 60 per cent. of said stock pro rata to the owners of 900 shares, known as the "first lot" of the stock of the Central American Growers' & Transportation Company; that the trustee shall collect dividends on said 5,100 shares, paying 60 per cent. thereof to the holders of certificates of interest, and the remaining 40 per cent. to defendant Piazza. The deed then contains the following provision as to voting by the trustee:

"Fourth. The said trustee, as the owner and holder as provided herein of the said 5,100 shares of stock of the said company, agrees to vote said stock at the annual meeting of the stockholders in each and every year, of which meeting it shall have due notice from the secretary, and the said trustee agrees to vote said stock for the purpose of re-electing the present board of directors, in so far as the trustee may legally and in the exercise of its proper discretion vote for the re-election of the present board of directors. The foregoing provisions of this paragraph are subject to the right of the board of directors, in case a vacancy should occur in their board, to name the successor for such vacancy by a unanimous vote of the remaining directors."

It is further provided that the trust shall exist for the benefit of the party of the first part, or his heirs, executors, administrators, or assigns, and that upon the determination of the trust period the trustee shall cause new certificates of stock to be issued, and shall turn over 40 per cent. thereof to Piazza, or his successors in interest, and 60

per cent. thereof to the holders of certificates of interest in said stock according to their several holdings.

The plaintiff is a purchaser of shares of the stock constituting the first block, and holds a certificate of interest in a proportionate amount of the 60 per cent. of the 5,100 shares transferred to the trustee by Piazza. The law of the state of South Dakota permits the stockholders of a corporation organized under the laws of that state to increase the number of its directors to any number not exceeding 13. The Title Guarantee & Trust Company, as trustee, at the request and by the direction of Piazza, now propose to vote the 5,100 shares of stock held by it under the foregoing deed of trust for a proposition to increase the number of directors of the Central American Company to 7; the purpose being, as it is stated, to elect the five individuals composing the present board and two additional members. The plaintiff claims that the purpose of this action is to give Piazza more complete and an undue control of the board. The defendants say that the sole purpose is to give proper representation to certain persons who have purchased stock of the company. The injunction sought is to prevent the trustee from voting the 5,100 shares in favor of the proposition to increase the number of directors.

We think that the motion should have been granted, so as to leave matters in statu quo, at least until a trial can be had. The effect of such an injunction is not necessarily to prevent the Central American Company from doing that which the laws of the state of its incorporation permit, but merely to prevent the trustee from violating the conditions of its trust. Its distinct agreement was to vote the 5,100 shares for the re-election of the "present board of directors," not merely for the individuals then comprising that board, and the so-called rule, which specified the conditions upon which the first block of stock was sold, also provided that the 5,100 shares should be voted annually for "the present first permanent board of directors." In each case the word "board" was used collectively. To increase the number of directors, so as to elect seven, instead of five, would be to elect a different board, although it might be composed in part of the same persons who composed the original board. It may readily be assumed that the purchasers of the stock constituting the first block made their purchases in reliance upon the agreement that the affairs of the company would be controlled and directed for 15 years by the identical board mentioned in the rule, and those who held out this representation to them cannot be permitted, upon the state of facts now appearing, to violate their agreement.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. The amount of the undertaking to be given by plaintiff will be determined upon the settlement of the order. All concur.